UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO. 4:22-CR-00027/WINSOR/FITZPATRICK

UNITED STATES OF AMERICA

v.

ANDREW DEMETRIC GILLUM and
SHARON JANET LETTMAN-HICKS,

    Defendants.
_____/

**ANDREW GILLUM'S MOTION TO DISMISS CHARGES IDENTIFIED AS CAMPAIGN CONTRIBUTION FRAUD AND GET OUT THE VOTE FRAUD**

Andrew Gillum moves to dismiss the charges in the Indictment alleging conspiracy to commit wire fraud and substantive wire fraud related to alleged "Campaign Contribution Fraud" (part of Count 2, Counts 9-15) and "Get Out the Vote" Fraud (part of Count 2, Counts 16-21).

I.   Background

On June 7, 2022, the Government filed an Indictment against Andrew Gillum and Sharon Lettman-Hicks. ECF No. 1. In Counts 2-21,

the Indictment alleges that Gillum committed conspiracy to commit wire fraud and substantive wire fraud through three categories of allegedly fraudulent activity. Relevant to this motion are two of the three theories: 1) the charges related to what the Government calls the "Campaign Contribution Fraud" (part of Count 2, Counts 9-15), and 2) the charges related to what the Government calls the "Get Out the Vote" Campaign Funds Fraud (part of Count 2, Counts 16-21).

In Count 2, the Government alleges that Gillum and Lettman-Hicks conspired to commit wire fraud through both of these theories as well as a third not relevant to this motion. As to the "Campaign Contribution Fraud," the Government alleges that, in May 2018, Gillum solicited Individual F to contribute money to the Gillum for Governor ("GFG") campaign by "falsely and fraudulently represent[ing] to Individual F that the entire contribution would be used for Gillum's campaign for Governor." *Id*. at ¶ 46. Based upon Gillum's "false representation . . . Individual F agreed to give a $250,000 contribution for Gillum's campaign for Governor." *Id*. at ¶ 47.

The Indictment alleges that instead of depositing the funds into the GFG campaign or the Forward Florida PAC account, Gillum and

Lettman-Hicks "caused the $250,000 to be wired into an account of Organization E, a 501(c)(4) organization, managed by an acquaintance whom Gillum and Lettman-Hicks could control." *Id.* at ¶ 48. It further alleges that Organization E then entered into a "fraudulent" contract with P&P to provide services for a voter education program regarding the candidates for governor. *Id.* Pursuant to this "fraudulent" contract, P&P allegedly obtained $132,500 of Individual F's contribution, which was used for Gillum and Lettman-Hicks' personal benefit. *Id.* at 17.

In Counts 9-15, the Government charges seven separate substantive wire fraud counts associated with this alleged Campaign Contribution Fraud: two text messages from Lettman-Hicks to Organization E, an email from Lettman-Hicks to Organization E, and wire transfers (the $132,000 paid from Organization E to P&P and two deposits of $10,000 to Gillum from P&P). *Id.* at pp. 22-23.

The Government also alleges that Gillum and Lettman-Hicks conspired to commit wire fraud through the "Get Out the Vote" portion of Count 2. *Id.* at p. 18. Specifically, the Government alleges that, in November 2018, prior to the election for Governor, Gillum and Lettman-Hicks caused $130,000 from the GFG campaign to be provided to a fiscal

agent for GFG to conduct "Get Out the Vote" (GOTV) efforts. *Id.* at p. 19. After the election, P&P allegedly sought reimbursement for $60,000 in expenses incurred relating to the GOTV efforts, even though P&P had not incurred such costs. *Id.* P&P then allegedly disbursed some of this $60,000 to Gillum marked as "end of year" bonuses. *Id.* at p. 20.

In Counts 16-21, the Government charges six separate substantive wire fraud counts associated with the alleged Get Out the Vote campaign funds fraud. *Id.* at pp. 23-24.

## II. Argument and Memorandum of Law

The charges related to the alleged "Campaign Contribution Fraud" (Counts 2, 9-15) and the "Get Out the Vote" Fraud (Counts 2, 16-21) fail as a matter of law. As to the "Campaign Contribution Fraud" counts, Gillum could not have intended to deprive Individual F of money or property because Individual F did not have a cognizable property or monetary interest in directing that his entire $250,000 contribution go to the Gillum for Governor campaign. Such an expectation or interest would be illegal under Florida campaign contribution limits, which limit individual contributions to $3,000. *See* Fla. Stat. § 106.08(1)(a)(1). Accordingly, these counts fail as a matter of law.

So do the Get Out the Vote wire fraud counts. The Government's argument is that the GFG campaign itself was the victim of the wire fraud, but a political campaign is a concept or goal and not an entity that can be the victim of fraud. Nor can the same entity be both a perpetrator and a victim, as the Indictment alleges here as to the substantive counts. Moreover, the Get out the Vote conspiracy count does not identify any victim that Gillum and Lettman-Hicks intended to defraud.

### a. Individual F did not have any property right or right to control his contribution, which would be illegal under Florida campaign contribution limit laws.

The Government alleges that Individual F was defrauded of $150,000 of his $250,000 contribution to the GFG campaign when Gillum allegedly falsely represented to Individual F that the entire contribution would be used "solely" for Gillum's GFG campaign, and it was not. ECF No. 1, p. 16. However, Gillum could not have intended to deprive Individual F of money or property because Individual F did not have a cognizable property or monetary interest in directing that his contribution go to the Gillum for Governor campaign, as this would be illegal under campaign contribution regulations.

"The wire fraud statute prohibits "only deceptive 'schemes to deprive [the victim] of money or property.'" *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020). In *United States v. Takhalov*, the Eleventh Circuit explained that "deceiving is a necessary condition of defrauding but not a sufficient one. Put another way, one who defrauds always deceives, but one can deceive without defrauding," and at most that is what happened here. *United States v. Takhalov*, 827 F.3d 1307, 1312–13 (11th Cir. 2016), as revised (Oct. 3, 2016), opinion modified on denial of reh'g, 838 F.3d 1168 (11th Cir. 2016) (internal citation omitted); *see also United States v. Wheeler*, 16 F.4th 805, 820 (11th Cir. 2021) ("So to prove substantive mail and wire fraud, the government must prove more than deceit; it must prove that the defendant intended to deprive the victim of something of value."). As the Court explained in *Takhalov*, "a schemer who tricks someone to enter into a transaction has not 'schemed to defraud' so long as he does not intend to harm the person he intends to trick. And this is so even if the transaction would not have occurred but for the trick. For if there is no intent to harm, there can only be a scheme *to deceive*, but not one *to defraud*." *Id.* at 1313 (emphasis in original).

An individual donating to a campaign has not been deprived of something of value because the campaign donation is a gift and the person donating has no property interest or right in controlling where his or her donation goes. This is the prototypical example of the situation *Takhalov* describes in which any alleged inducement of the donor to enter into a transaction that he otherwise would not have made is insufficient to show wire fraud. *See Takhalov*, 827 F.3d at 1310; *see also United States v. Pisani*, 773 F.2d 397, 411 (2d Cir. 1985) ("As to the claimed scheme to defraud the [campaign] contributors, there is scant evidence to establish that [campaign] contributors entertained the expectations attributed to them by the government."). *But see In re Grand Jury Subpoena*, 2 F.4th 1339, 1347 (11th Cir. 2021) (collecting cases) ("[T]he misappropriation for personal use of campaign donations can constitute a scheme to defraud.").

That is especially true when the alleged instructions for use are directly contrary to Florida law. Florida Statute § 106.08(1)(a)(1) provides that, except for political parties or affiliated party committees, no person may, in any election, make contributions in excess of $3,000 to a candidate for statewide office. Any person who knowingly and willingly makes or accepts a contribution in excess of $3,000 commits a first-degree

misdemeanor. Fla. Stat. § 106.08(7)(a). Any person who knowingly and willfully makes or accepts two or more contributions in excess of $3,000 commits a third-degree felony. Fla. Stat. § 106.08(7)(b).

A donation of $150,000 is 50 times the contribution limit for one person. A donation of $250,000 is 83 times the limit. Individual F had no property right in dictating that all the funds he donated go to Gillum's campaign for Governor because such a donation would violate § 106.08.[1] *See United States v. Pierce*, 224 F.3d 158, 165-66 (2d Cir. 2000) (reversing conviction for defrauding the Canadian government of its right to duty taxes where "there is no evidence whatsoever of a property right—a right to revenue—of which the Canadian government could be defrauded"); *see also United States v. Adler*, 186 F.3d 574, 578-79 (4th Cir. 1999) (affirming wire fraud acquittal where alleged victim did not have property right to particular funds that company received from settlement).

---

[1] The Government does not allege that the full $250,000 did not go to the campaign, but that $150,000 did not go to the campaign as promised.

While there are cases finding that a misuse of contributors' campaign funds can constitute wire fraud, those cases involve donations within the campaign finance limits that were made directly to a campaign. They do not support the Government's allegation that a campaign contributor could be defrauded of the right to donate to a campaign in an amount greater than allowed by law. Accordingly, the Campaign Contribution Fraud conspiracy charge (Count 2) and the substantive wire fraud counts (Counts 9-15) should be dismissed.

### b. The Get Out the Vote wire fraud counts fail as a matter of law because a political campaign, on its own, cannot be the victim of fraud.

In Counts 16-21, the substantive fraud counts related to the alleged Get Out the Vote fraud, the Government seems to allege that Gillum and Lettman-Hicks defrauded the Gillum For Governor campaign itself. ECF No. 1, pp. 18-20, 23-24. The Government alleges that the GFG campaign was the victim of the alleged fraud when it did not receive the full extent of the Get Out the Vote efforts that it should have received from P&P.[2]

---

[2] The Government cannot allege that the GFG campaign contributors are the victims of the alleged fraud for several reasons, including that at the time when P&P was allegedly paid $60,000 from the GFG campaign for reimbursement of the GOTV efforts, the election was over. ECF No.

*Id.* at p. 19 (alleging that the GFG campaign spent $130,000 for Get Out the Vote efforts, including efforts that P&P was reimbursed for).[3] But the GFG campaign is not a separate entity or person. It is a concept or a common goal to engage in activities for the purposes of influencing an election. As such, it cannot be the victim of wire fraud.

Moreover, the Government's theory appears to be that the GFG campaign was both the victim of the fraud, *and also the perpetrator. See, e.g., id.* at ¶ 62 (emphasis added) ("To conceal the fraud, GILLUM and LETTMAN-HICKS caused *the GFG* to file and amended campaign treasurer's report with the State of Florida that falsely stated than an

---

1, ¶¶ 59, 60. Campaign contributors cannot assert an interest or control over what happens to their contributions once the campaign is over as their purpose for contributing, i.e., supporting the campaign, no longer exists. Nor does not allege a scheme to defraud by depriving another of the intangible right of honest services under § 1346. And there are no allegations to suggest that Gillum engaged in bribery or a kickback scheme to support a conviction under § 1346.

[3] This allegation is akin to an independent contractor failing to perform the services he was contracted to do for a company. Rather than a criminal prosecution, the remedy is for the company to file a civil lawsuit for breach of contract to dispute whether the services were performed. *See United States v. Chandler*, 388 F.3d 796, 803 (11th Cir. 2004) ("[B]reach of contract does not support a mail fraud conviction.").

expenditure of $60,000 was made from campaign funds to P&P for the purpose of 'Get Out the Vote Canvassing.'"). This obviously cannot be a viable theory.

In addition, the "fraud" alleged is not actionable under the wire fraud statute. In *Kelly*, the Supreme Court made clear that the wire fraud statute only prohibits "deceptive 'schemes to deprive [the victim] of money or property.'" *Kelly*, 140 S. Ct. at 1571. This requirement "prevents these statutes from criminalizing all acts of dishonesty by state and local officials," unless a public official engages in a scheme involving bribes and kickbacks, which is criminalized by 18 U.S.C. § 1346, and not relevant here. *Id.* The Supreme Court in *Kelly* further noted that:

> We specifically rejected a proposal to construe the [wire fraud] statute as encompassing "undisclosed self-dealing by a public official," even when he hid financial interests. The upshot is that federal fraud law leaves much public corruption to the States (or their electorates) to rectify.
>
> . . .
>
> Federal prosecutors may not use property fraud statutes to set standards of disclosure and good government for local and state officials . . . If U.S. Attorneys could prosecute as property fraud every lie a state or local official tells in making such a decision, the result would be . . . "a sweeping expansion of federal criminal jurisdiction."

*Id.* at 1565, 1567 (internal citations omitted). The alleged scheme set forth in this theory is not actionable under the wire fraud statute.

### c. The Get Out the Vote conspiracy charge fails because the Government fails to identify any victim of the purported fraud.

The Count 2 "Get Out the Vote" charge fares even worse than the related substantive counts, because the Indictment does not allege who Gillum and Lettman-Hicks purportedly intended to deprive of property. ECF No. 1, pp. 18-20. The Government does not incorporate subsequent portions of the Indictment into earlier portions. Thus, the allegations in Counts 16-21 identifying the GFG campaign as the victim of the purported fraud are not incorporated to Count 2 and the Government does not state a claim for conspiracy to commit wire fraud. Accordingly, the "Get Out the Vote" allegations of Count 2 should be dismissed.

## CONCLUSION

In sum, the conspiracy to commit wire fraud and substantive wire fraud counts related to the alleged Campaign Contribution Fraud of Individual F (Counts 2, 9-15) and the "Get Out the Vote" Fraud (Counts 2, 16-21) fail as a matter of law and should be dismissed.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1(B), the undersigned counsel conferred with AUSA Andrew Grogan. He advises that he opposes this motion.

The Undersigned certifies that this filing does not exceed 8,000 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:   /s/ David Oscar Markus
      David Oscar Markus
      Florida Bar Number 119318
      dmarkus@markuslaw.com

      /s/ Katherine E. Miller
      Katherine E. Miller
      Florida Bar Number 104790
      kmiller@markuslaw.com